IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYED A. AZEEM,                    )
                                  )
        Plaintiff,                )
                                  )   No. 07 C 0255
        v.                        )
                                  )
R. JAMES NICHOLSON, Secretary of  )
Veterans Affairs,                 )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In his Complaint, Plaintiff Syed A. Azeem alleges that his employer, the United States Department of Veterans Affairs (the "VA") discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Before the Court is the VA's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendant's motion.

## BACKGROUND[1]

**I.      Introduction**

Plaintiff Syed Azeem is a federal employee who worked within the radiotherapy department at the Hines VA Hospital. (R. 45-1, Def.'s Rule 56.1 Stmt. Facts ¶ 3; R. 51-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Azeem's pay grade level was GS-9. (Def.'s Stmt. Facts ¶ 3; Pl.'s Stmt. Facts ¶ 1.) In his Complaint, Azeem alleges that the VA discriminated against him based

---

[1] Because Azeem failed to properly respond to Defendant's Local Rule 56.1 Statement of Facts, the Court admits the uncontroverted statements as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

on his race (Asian) because it failed to upgrade his position from a grade level GS-9 to the grade level of GS-11. (Pl.'s Stmt. Facts ¶ 2.)

## II. Position Upgrade

The radiotherapy department at the Hines VA Hospital is an outpatient clinic jointly staffed by five or six VA employees and also doctors and nurses from the Loyola University Medical Center. (*Id.* ¶ 3; Def.'s Stmt. Facts ¶ 5.) On August 23, 2001, Azeem sent an email to his supervisor, Dr. Barbara Temeck, regarding an upgrade of his grade level from GS-9 to GS-11. (Pl.'s Stmt. Facts ¶ 5; Def.'s Stmt. Facts ¶ 6.) In response, Dr. Temeck explained that a desk audit was necessary to determine if an upgrade was appropriate. (Def.'s Stmt. Facts ¶ 6.) Thereafter, VA human resources employee, Molette Randle, conducted a desk audit of Azeem's position. (Pl.'s Stmt. Facts ¶ 6; Def.'s Stmt. Facts ¶ 7.) Randle concluded that Azeem's position could be reclassified to a GS-11 position, but that the VA Resource Committee had to approve any such upgrade. (Pl.'s Stmt. Facts ¶ 7; Def.'s Stmt. Facts ¶ 7.) On February 13, 2002, Dr. Elaine Adams, Azeem's new direct supervisor, proposed to the VA Resource Committee that Azeem's position be upgraded to GS-11 based on Randle's desk audit findings. (Pl.'s Stmt. Facts ¶ 9; Def.'s Stmt. Facts ¶ 8.)

## III. Hines VA Hospital Reorganization

Sometime in 2002, the radiotherapy department was transferred from the chief of staff's office to the medical service department during Hines VA Hospital's reorganization. (Def.'s Stmt. Facts ¶ 8.) Pursuant to the reorganization, Dr. Temeck became Azeem's second-level supervisor because she remained responsible for the overall administration of the hospital's clinical services. (*Id.*) On May 2, 2002, Dr. Temeck advised Azeem via email that the VA

Resource Committee had deferred action on Randle's desk audit of Azeem's position due to the ongoing reorganization that impacted all positions in the hospital. (*Id*. ¶ 9; Pl.'s Stmt. Facts ¶¶ 9, 10.) In October and December 2002, the VA management approved two new organization charts that showed a second transfer of the radiotherapy department from the medical service area to the medicine and neurology line. (Def.'s Stmt. Facts ¶ 10.) Under the reorganization, Azeem's position as a program specialist was listed as a grade level GS-9. (*Id*.)

## IV. Communications About Position Upgrade

In May 2003, Azeem exchanged a series of emails with VA human resources employee, Eileen Pager-Williams, about the grade level classification for his position. (*Id*. ¶ 11.) Pager-Williams advised Azeem that the changed requirements of his position resulting from the reorganization were probably significant and that the earlier desk audit may not be applicable after the reorganization. (*Id*.) Pager-Williams also informed Azeem that she did not see a basis for an upgrade of Azeem's position based on the materials Azeem provided her. (*Id*.) On May 14, 2003, Pager-Williams sent Azeem a follow-up email discussing upgrades, reclassifications, and the proper role of a classifier when conducting a desk audit. (*Id.* ¶ 12.) Further, in the May 14 email, Pager-Williams explained that if higher-graded work is identified during a desk audit, this does not necessarily mean that the employee is entitled to an upgrade because the employee's manager is free to assign the higher graded work to another employee. (*Id*.)

In April 2004, Azeem exchanged another set of emails with VA employee, Anthony Chimento, seeking to obtain Chimento's assistance in obtaining an upgrade to GS-11. (*Id*. ¶ 13.) In an email dated April 30, 2004, Chimento informed Azeem that the chief of staff, Dr. Temeck, had questioned the validity of the prior desk audit completed by Randle and had requested that

Pager- Williams review Randle's findings. (*Id.*) When Dr. Temeck was asked about the Randle desk audit at her deposition, she recalled discussing it with VA human resources employee Clare Hajduk and that Hajduk told her that the audit was not done properly. (*Id.*) Meanwhile, Hajduk testified that the desk audit was deficient because it only provided conclusory statements about the duties required for Azeem's position and failed to provide any analysis of how Azeem's position had changed to justify an upgrade to GS-11. (*Id.* ¶ 14; *see also* Pl.'s Stmt. Facts ¶ 8.)

In June 2004, Azeem, Chimento, and Pager-Williams exchanged another series of emails regarding Azeem's upgrade request. (Def.'s Stmt. Facts ¶ 15.) In an email dated June 10, 2004, Pager-Williams explained to Azeem that the value of the prior desk audit was questionable because the functions of his position changed following the hospital's reorganization. (*Id.*) Pager-Williams also stated that she would arrange for another desk audit if Azeem requested one. (*Id.*) On June 23, 2004, Pager-Williams sent Azeem, Chimento, and others another email providing a detailed explanation of the desk audit process. (*Id.* ¶ 16.) This email reiterated that Azeem's position did not involve sufficient complexity to justify a higher grade level. (*Id.*)

On October 6, 2005, VA employee Jane Moen sent an email to Pager-Williams explaining that she was Azeem's new supervisor, that Azeem had provided her with a packet of information regarding the Randle desk audit, and that Azeem wanted to know when to expect his upgrade to GS-11. (*Id.* ¶ 17.) Pager-Williams responded to Moen's email the next day and explained the various problems with Randle's audit, as well as her own conclusion that Azeem's position did not qualify for an upgrade. (*Id.*) On October 14, 2005, Moen documented a meeting that she had with Azeem regarding his request for an upgrade. (*Id.* ¶ 18.) At the

meeting, Moen explained to Azeem that his position could not be upgraded because: (1) the original desk audit was too old and was completed before the hospital's reorganization; (2) Randle was not authorized to recommend an upgrade; (3) Azeem's current position was not complex enough to warrant an upgrade; and (4) Dr. Temeck or Dr. Schmitt – the chief of the medicine & neurology service line – would not support the upgrade. (*Id.*) October 20, 2005, Azeem sent an email to Moen confirming their discussion of his upgrade request on October 14. (*Id.* ¶ 19.) Azeem's email also noted that he had conferred with the human resources department and was told that he should ask his supervisor for a new desk audit. (*Id.*) Azeem then stated that he would like to "officially" request a new desk audit. (*Id.*) On December 19, 2005, Moen documented another meeting that she had with Azeem regarding his request for an upgrade. (*Id.* ¶ 21.) At this second meeting, Moen reiterated that management did not currently support an upgrade, but invited Azeem to provide her with a list of his duties that he believed sufficient to warrant a higher grade. (*Id.*)

## V. EEO Process for Federal Employees

On December 5, 2005, Azeem, as a federal employee, submitted an informal complaint of discrimination to an Equal Employment Opportunity ("EEO") counselor within the VA Office of Resolution Management. (*Id.* ¶ 20; Pl.'s Stmt. ¶ 12.) In his informal EEO complaint, Azeem alleged that the VA had discriminated against him based on his race (Asian) because it failed to upgrade his position from a GS-9 to a GS-11. (Def.'s Stmt. Facts ¶ 20; Pl.'s Stmt. Facts ¶ 12.) On January 18, 2006, Azeem filed a formal administrative complaint with the VA Office of Resolution Management alleging that the VA had discriminated against him based on his race because it failed to upgrade his position to grade level GS-11. (Def.'s Stmt. Facts ¶ 22.)

5

On February 13, 2006, the VA issued a final agency decision concluding that Azeem's claims were time-barred because the alleged discrimination occurred well over the 45 days before his initial contact with an EEO counselor on December 5, 2005. (*Id.* ¶ 23.) In support of this conclusion, the final agency decision stated that Azeem had received numerous emails dating back to May 13, 2003, explaining to him that the December 2001 desk audit was not correct, that management did not support an upgrade, and that the duties of his position did not meet the GS-11 level. (*Id.*) On August 8, 2006, the EEOC denied Azeem's appeal of the VAs' final agency decision concluding that Azeem knew or should have known of the alleged discrimination against him by May 13, 2003, but did not contact an EEO counselor until more than two-and-a-half years later on December 5, 2005. (*Id.* ¶ 24.) On October 18, 2006, the EEOC denied Azeem's motion to reconsider its decision. (*Id.*) On January 16, 2007, Azeem filed his Complaint in the present federal lawsuit. (*Id.* ¶ 25.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

**I.     Timeliness of Azeem's Title VII Claim**

The VA first argues that the Court must dismiss Azeem's race discrimination claim because he failed to exhaust his mandatory administrative remedies in a timely fashion. *See Smith v. Potter,* 445 F.3d 1000, 1002 (7th Cir. 2006); *Ester v. Principi,* 250 F.3d 1068, 1071 (7th Cir. 2001). When a federal employee wants to file a federal lawsuit based on unlawful discrimination, the employee must first follow certain administrative procedures set forth in 29 C.F.R. § 1614. *See Smith,* 445 F.3d at 1004-06; *see also Lapka v. Chertoff,* 517 F.3d 974, 981 (7th Cir. 2008). For instance, federal employees

> who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must ... initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

*Smith,* 445 F.3d at 1006 (citing 29 C.F.R. 1614.105(a)(1)). "Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII." *Id.* at 1007. "The requirement that a federal employee exhaust available administrative remedies in a timely fashion is subject to the doctrines of waiver, estoppel and equitable tolling." *Ester,* 250 F.3d at 1071; *see also Lapka,* 517 F.3d at 981.

Here, Azeem was aware of the alleged racial discrimination as early as May 2003 when

7

he exchanged a series of emails with VA human resources employee Pager-Williams, who explained in detail why Azeem's position would not be upgraded to level GS-11. Again in April 2004, Pager-Williams and Azeem exchanged another series of emails concerning Azeem's request for an upgrade and Pager-Williams' explanation why his position did not qualify for an upgrade. Azeem, however, did not file his informal complaint of discrimination with an EEO counselor until December 5, 2005 – well over the 45 day requirement to do so. Thus, Azeem failed to exhaust his administrative remedies in a timely fashion. *See Smith,* 445 F.3d at 1006. Finally, Azeem does not argue that any equitable considerations excuse his failure to bring his informal complaint "within 45 days of the date of the matter alleged to be discriminatory." *See* 29 C.F.R. § 1614.105(a)(1).

Despite Azeem's failure to timely exhaust his administrative remedies, the Court will nonetheless address the merits of Azeem's race discrimination claim for the sake of completeness.

**II.     Title VII – Race Discrimination Claim**

Azeem maintains that the VA discriminated against him based on his race when it did not change his pay grade from GS-9 to GS-11. Under Title VII, Azeem may prove intentional discrimination by either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dewitt v. Proctor Hosp.,* 517 F.3d 944, 950 (7th Cir. 2008). Under the direct method, Azeem must present direct or circumstantial evidence that points directly to a discriminatory motivation behind the VA's alleged adverse employment action. *See id.* Because Azeem does not present direct evidence of race discrimination, the Court reviews his claim under the *McDonnell-Douglas* indirect method

of proof.

Under the indirect, burden shifting method, Azeem must first establish a prima facie case of intentional discrimination by showing that: (1) he is a member of a protected class; (2) he reasonably performed to the VA's legitimate job expectations; (3) the VA took a materially adverse employment action against him; and (4) the VA treated him differently than similarly situated employees outside of his protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Maclin v. SBC Ameritech,* 520 F.3d 781, 787 (7th Cir. 2008). The failure to satisfy any single element of a prima facie case is fatal to an employee's race discrimination claim. *See Williams v. Airborne Exp., Inc.,* 521 F.3d 765, 768 (7th Cir. 2008).

The Court turns to the fourth prima facie element – whether the VA treated Azeem differently than similarly situated employees outside of his protected class – because it is dispositive. An employee is "similarly situated" if that employee is comparable to the plaintiff in all material respects. *See Warren v. Solo Cup Co.,* 516 F.3d 627, 631 (7th Cir. 2008). When determining whether employees are directly comparable, the Court examines certain relevant factors depending on the context of the case, including whether the employees (1) had the same job description, (2) were subject to the same standards, (3) had the same supervisor, and (4) had comparable experience, education, and other qualifications. *Id.*; *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). Put differently, "[a]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). The purpose of the similarly situated test "is to

9

determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007).

With respect to comparators, Azeem testified that he was treated less favorably than two other employees within the VA's environmental management service (EMS) who allegedly had their positions upgraded following desk audits. (Def.'s Stmt. Facts ¶ 27.) At his deposition, however, Azeem conceded that he did not know these employees' names, that he did not have any direct or personal knowledge of the circumstances surrounding their upgraded positions, and that he had only heard about the upgrades through the grapevine. (*Id.*) Azeem further testified that he did not know what positions were held by these two other employees, who supervised them, who made the decision to upgrade their positions, or why their positions were upgraded. (*Id.*) In addition, Azeem admitted that he has never actually seen the desk audits for these EMS positions and that he had no knowledge of whether there was an issue with respect to these other desk audits being done properly. (*Id.*) Finally, Azeem fails to set forth any other evidence regarding similarly situated employees outside of his protected class. As such, he has failed to provide the Court with sufficient evidence in which the Court can make a meaningful comparison to determine whether discrimination was at play. *See Barricks,* 481 F.3d at 560.

Viewing the evidence in a light most favorable to Azeem, he has failed to set forth evidence creating a genuine issue of fact for trial as to the fourth element of his prima facie case of race discrimination. Therefore, his race discrimination claim must fail. *See Williams,* 521 F.3d at 768.

**CONCLUSION**

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment.

Dated: June 23, 2008

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**